UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REDDING BANK OF COMMERCE, a California Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>EMIN C. KESER; CORA KESER; NATHAN EMERSON; CARYN EMERSON; E&K DEVELOPMENT, INC.; AMERICAN FIRST FUNDING, INC.; KESER ENTERTAINMENT, INC.; KESER FAMILY TRUST; IVAN BARZAKOV and PAMELA RAND BARZAKOV, trustees of the 2002 BARZAKOV TRUST; DAVID A. VALENCIA, JR., trustee of the ONSTOTT FAMILY LIVING TRUST; UNITED STATES SMALL BUSINESS ADMINSTRATION; FIDELITY NATIONAL TITLE COMPANY OF CALIFORNIA,<br><br>    Defendants. | No.  2:13-cv-01756-JAM-CMK<br><br>**ORDER ON CO-RECEIVERS'<br>FINAL ACCOUNT AND REPORT** |

   This matter is before the Court on Co-Receivers Robert and Bruce Middleton's (collectively "Co-Receivers") Final Account and Report (Doc. #14).  The following parties have presented objections to the report or have made claims to the remaining funds of the receivership: Plaintiff Redding Bank of Commerce

1

("Redding Bank"); and Defendants David A Valencia, Jr., as trustee of the Onstott Family Living Trust ("Valencia"); and the United States Small Business Administration ("SBA").

## I.   PROCEDURAL BACKGROUND

In October 2009, Redding Bank filed a complaint (Doc. #1-1, Exh. A) in the Shasta County Superior Court seeking:

    (A)   Judicial Foreclosure of Deed of Trust;

    (B)   Deficiency Judgments;

    (C)   Collection for Sums due on Promissory Notes; and,

    (D)   Appointment of Receiver.

There were twelve named defendants.

According to that complaint, E&K Development, Inc. ("E&K) delivered a promissory note to Redding Bank secured by a deed of trust in which Redding Bank is named as the beneficiary. Comp. ¶ 11. The real property underlying the security ("the Property") was owned by E&K and is located in Shasta County. The Property consists of two parcels, the North Parcel and the South Parcel. Redding Bank alleged its interests in the Property were superior to any held by the remaining defendants.

In early 2010, the state court approved a stipulation agreed to by Redding Bank and E&K (Doc. #2-2, Bates 253-260). The stipulation appointed the Middletons as Co-Receivers with respect to the Property and detailed their obligations pursuant to the receivership. The case was then dismissed without prejudice in June 2010. Id. at Bates 217-220.

In August 2012, the Property was sold at a public auction to Redding Bank. Final Report (Doc. #14, Exh. A.--Exh. D at pp. 26-

34).  This senior foreclosure sale was conducted without the involvement of the Co-Receivers.  Id. at p. 6.

On May 10, 2013, the state court issued a minute order directing the receivers to appear to discuss their final account and application for discharge. Doc. #1-1, Exh. D.  On June 6, 2013, Valencia filed a motion for sanctions against Redding Bank and Co-Receivers and to set aside the non-judicial foreclosure sale.  Doc. #2-2 at Bates 179-184.  The motion was denied by the state court on July 1, 2013; in the same order, Co-Receivers were granted the right to pay legal expenses.  Doc. #2-1 at Bates 54.

On July 23, 2013, Co-Receivers filed their Final Report in state court.  Doc. #1-1, Exh. E.[1]  A hearing on the Final Report was scheduled in state court for September 9, 2013.  On August 23, 2013, SBA removed the matter to this Court pursuant to 28 U.S.C. §§ 1442, 1444 (Doc. #1).

Co-Receivers resubmitted the Final Report in this Court on November 22, 2013.  This Court issued a minute order (Doc. #19) ordering Co-Receivers to additionally submit a written response to the various objections and responses filed by the parties to the matter.  Co-Receivers submitted a Reply (Doc. #20) and responses were received from Valencia (Doc. #24), Redding Bank (Doc. #26), and SBA (Doc. #27).

A hearing was held on March 26, 2014.  The Court ordered additional briefing from Valencia and SBA on the issue of how the Court should disburse the remaining funds of the receivership (Doc. #32).  Counsel for the Co-Receivers submitted records to

---

[1] The Final Report filed in state court is identical to the one filed in this Court (Doc. #14).

3

the Court at the hearing detailing the attorneys' fees charged to the receivership thus far; the Court ordered counsel to submit additional records detailing costs and fees through a filing date of April 15, 2014. Additional briefing by SBA (Doc. #33) and Valencia (Doc. #34) was received. Co-Receivers submitted a revised final account and report, along with additional records regarding the attorneys' fees charged.

## II.  DISCUSSION

### A.  Details of Final Report

In the Notice of Hearing (Doc. #14), the Co-Receivers moved the Court for the following:  (1) an order settling and approving their Final Report, (2) the Court's direction on distribution of the remaining sum of $99,901.82 and assets remaining in the receivership, and (3) to be discharged from their duties.

The Final Report indicates that the receivership period began in March 2010 and continued through September 2012 when the foreclosure sale took place. A bank account was maintained for the Property as a whole. The North Parcel included 910 and 920 Hilltop Drive, which contained six rentable units.  They were rented out to Chuck E Cheese, Pasta Pronto, Nails & Spa, and Unique Cuts. The South Parcel included 930 and 940 Hilltop Dive, which contained six rentable units. All the units in the South Parcel contained tenants during the entire course of the receivership, including Nutri Shop, Sweet Spot, Yaks, Great Harvest, Bundled Babies, and Grace Church. Only one unit on the Property was vacant throughout the entire period. The Final Report indicates that SBA was the first junior lien holder on the

North Parcel and Valencia was a junior lien holder on the South Parcel.

Co-Receivers assert that their obligations were completed as best as possible under all of the surrounding circumstances and no negligence occurred on their part, including collecting rents from the commercial tenants, paying property taxes, and making loan payments. The Final Report includes a full accounting of the receivership, including a "Settlement of Account" summary.

### 1. Rent

During the receivership, Co-Receivers collected $525,486.84 in rent from the North Parcel and $257,700 in rent from the South Parcel. Co-Receivers assert that the poor economic conditions of this period rendered some tenants on the South Parcel unable to pay their full rents some months. Co-Receivers worked with these tenants in order to avoid having vacant units.

### 2. Property Taxes

Co-Receivers paid $49,650.72 in property taxes on the North Parcel, constituting "the majority of taxes for the north parcel." They paid $17,594.73 in property taxes on the South Parcel. The Final Report indicates that there was not enough income generated by the South Parcel to cover the taxes.

### 3. Outstanding Loan Amounts

Co-Receivers made timely payments to Redding Bank on the loan obligations of E&K during the entire receivership. Payments totaling $266,686 were made on the mortgage on the North Parcel. Mortgage payments of $250,750.05 were made on the South Parcel mortgage.

//

      4. Remaining Assets

After the foreclosure of the Property, the assets on hand totaled $99,901.82. According to the "Settlement of Account," this figure is a result of a surplus on the North Parcel of $185,758.60 and a deficit on the South Parcel of $85,856.78. Final Report (Doc. #14) Exh. E. Co-Receivers ask this Court to order and direct the manner in which this remaining sum is to be distributed.

    B.    Objections and Responses

      1. Redding Bank

Redding Bank filed a response (Doc. #12) to the Final Report on November 12, 2013. It contends Redding Bank is entitled to the remaining assets because Redding Bank was required to pay $134,478.98 in unpaid taxes on the Property after the foreclosure. Redding Bank argues Co-Receivers should have paid these taxes with the assets on hand before the foreclosure took place pursuant to their obligations under the state court order establishing the receivership.

On March 19, 2014, Redding Bank filed a supplemental response to the Final Report and the objections and responses of the other parties (Doc. #26). It argues the matter should be remanded back to the state court. It relies on Cal. Rule of Court, Rule 3.1179(a), which states that a "receiver is the agent of the court and not of any party", and holds assets for the court and not for the plaintiff or defendant. Redding Bank also quotes Strain v. Superior Court of Los Angeles, 168 Cal. 216, 220 (1914).

//

1          The full quote from Strain states:
2          It is the duty of a court appointing a receiver to
3          protect him in the discharge of his duties and in the
4          control and possession of the property in his custody
5          as such against any one interfering therewith whether a
6          party to the proceeding in which the receivership is
7          created or not, and the jurisdiction of the court to do
8          this is not affected by the fact that the act of
9          interference was committed . . . outside the
10         territorial jurisdiction of the court if the alleged
11         offenders are within its territorial jurisdiction.
12   Strain, 168 Cal. at 220.
13         Redding Bank "acknowledges" in its supplemental response
14   (Doc. #26) that if the Court does not award the remaining assets
15   to Redding Bank, they should be awarded to SBA because it is
16   "next in line" given its priority immediately after Redding
17   Bank's deed of trust.  Redding Bank argues that Valencia's
18   objections should be ignored as they are without merit.
19              2. SBA
20         On September 27, 2013, SBA filed a Response/Objection (Doc.
21   #8) to the Final Report.  SBA claims to be the only junior
22   lienholder for the North Parcel (with an outstanding debt balance
23   exceeding $1 million), underneath Redding Bank's first deed of
24   trust.  SBA's only objection to the Final Report and the
25   receivership as a whole is based on the Co-Receivers commingling
26   the funds from the more profitable North Parcel with the
27   unprofitable South Parcel.  SBA points to the Settlement of
28   Account which indicates the revenues from the North Parcel were

much larger and were actually used to pay off the deficit on the South Parcel.  Therefore, SBA argues, the remaining funds should be distributed to the lienholders of the North Parcel.

In a Supplemental Response/Objection (Doc. #16) filed on January 22, 2014, SBA argues that Valencia should not receive any of the remaining funds because those funds were solely generated by income from the North Parcel, a piece of property in which Valencia has no stake. SBA contends awarding Valencia any of these funds would constitute unjust enrichment.

SBA next argues that since Redding Bank instituted a non-judicial foreclosure sale of the Property and then bought the Property at that foreclosure with a full credit bid for the amount of its lien, it is not entitled to the funds. Docs. #8, #16; citing Redding Bank Response (Doc. #12) Exh. B & C (Trustee's Deeds upon Sale of the Property) at pp. 14-23.  SBA cites Pacific Inland Bank v. Ainsworth, 41 Cal. App. 4th 277, 280-81 (1995), which clearly explains the dynamics involved here. In Pacific Island Bank, a California Court of Appeal addressed the effect of a primary lender purchasing a property with a full credit bid:

> When a debtor defaults on a secured real property loan, the lender-beneficiary may institute nonjudicial foreclosure proceedings triggering a trustee's sale of the property to satisfy the obligation. ([Cal.] Civ. Code, § 2924 et seq.)
>
>    . . .
>
> A cash or credit bid extinguishes the debt owing on the property by the amount bid. Therefore, when a

8

1     lender acquires the property either by cash or on a
2     credit bid, for the full amount due by terms of the
3     note and deed of trust, it is no longer the creditor or
4     mortgagor of the borrower because there is no longer
5     any debt to be enforced. As explained by our Supreme
6     Court almost 100 years ago, "whatever interest [it]
7     had[,] . . . ceased with the extinguishment of the
8     indebtedness."
9     ". . . [Therefore, a full credit bid lender] is
10    precluded from recovering for this impairment of
11    security because it has been established, by [the] full
12    credit bid, that [the] security was sufficient to
13    satisfy the debt."  Like any other purchaser, a lender
14    has no obligation to bid any particular amount. It
15    should assess the property's value at the time of the
16    trustee's sale and bid accordingly. . . . "[A]fter full
17    credit bid, [a] lender cannot pursue any other remedy
18    regardless of [the] actual value of the property on the
19    date of sale[.]"
20 Pac. Inland Bank, 41 Cal. App. 4th at 280-81 (internal citations
21 omitted) (emphasis added).  Therefore, SBA contends the funds
22 should flow to SBA as the first junior lienholder on the North
23 Parcel.
24     SBA also includes a footnote in its initial response (Doc.
25 #8) stating that it should be "reimbursed for the $85,856.78 in
26 North Parcel income that was used to pay South Parcel debts as a
27 result of the co-receivers' co-mingling of funds."  SBA
28 eventually identifies who should be responsible for such a

9

1  reimbursement in its Supplemental Response/Objection (Doc. #16)
2  on January 22, 2014.  There it claims it is due reimbursement
3  from Redding Bank because the Co-Receivers' commingling of funds
4  worked to the benefit of Redding Bank's interest in the South
5  Parcel to the detriment of SBA's junior interest in the North
6  Parcel.  However, it cites no legal authority for holding Redding
7  Bank liable for such claimed damages.
8       Redding Bank argues in its Further Response (Doc. #26) that
9  this is not the proper procedure for recovering such a debt.  In
10 addition, as pointed out by Co-Receivers in their Reply to the
11 Objections (Doc. #20) and Valencia in his Reply (Doc. #8) there
12 was no instruction included by the state court in the order
13 establishing the receivership that indicated Co-Receivers should
14 separately account for or administer the two parcels.  SBA
15 responds to this in its Reply to Co-Receivers' Response (Doc.
16 #27).  SBA states that it was not a party to the stipulation
17 establishing the receivership and that the commingling of funds
18 was consequential to it.
19         3. <u>Valencia</u>
20      Valencia requests the Court to take judicial notice (Doc.
21 #10) of a document filed in the state court in this same matter.
22 The document is a declaration from Valencia making a series of
23 objections to the Final Report that was filed in the state court.
24 Valencia RJN Exh. A.  A document filed in another court
25 pertaining to the same manner before the present Court is
26 judicially noticeable as to its having been filed in the other
27 court.  Fed. R. Evid. 201.  The Court takes notice of the
28 document and accepts the objections within the document as if

they had been filed in this Court in response to Co-Receivers' Final Report.

The declaration contains a series of objections on the following bases:

(1) No inventory of the Property was filed within 30 days of the receivership commencing, as required by the enabling stipulation; therefore, it is impossible to know if the stated "property on hand" at the beginning of the period is correct.

(2) Co-Receivers give no reason for assuming responsibility in March 2010, when they were appointed co-receivers in February 2010; therefore, it is impossible to know if they have accounted for everything.

(3) Exhibit E to the Accounting has arbitrary dates (3/11/10-11/29/12) for the receivership period; shows two checks (#1222-1223) that are dated after this period; and does not account for three other checks (#1218-1221). Valencia has requested the Court order Redding Bank to turn over the bank statements.

(4) Redding Bank "orchestrated" the whole receivership without following correct procedure (i.e. did not serve all defendants or get all of their agreement for the stipulation, and the Co-Receivers did not file a bond, sign an oath, or even handle the money).

(5) No monthly reports were filed until Valencia moved to sanction Redding Bank or Co-Receivers, and the reporting stopped once the Property was foreclosed upon, in violation of California Rules of Court Rule 3.1182.

11

1           (6)   The accounting does not show all the rents received.
2        On October 7, 2013, Valencia replied (Doc. #9) to SBA's
3   Response/Objection (Doc. #8).  In it, Valencia repeats the same
4   objections from the declaration discussed above.  Valencia also
5   claims that SBA is only entitled to a pro rata share of the
6   remaining funds because the foreclosure made SBA an unsecured
7   creditor like the rest of the junior lienholders.  Valencia
8   repeats these same arguments in its supplemental Reply to SBA's
9   Supplemental Response (Doc. #17) filed on January 27, 2014.  He
10  cites California Code of Civil Procedure § 729.080(e) for his
11  proposition that all junior lienholders to the Property as a
12  whole are unsecured creditors and can only sue on the underlying
13  debt like any other unsecured creditor.  That section provides:
14       (e) Liens extinguished by the sale, as provided in
15       Section 701.630, do not reattach to the property after
16       redemption, and the property that was subject to the
17       extinguished lien may not be applied to the
18       satisfaction of the claim or judgment under which the
19       lien was created.
20  Cal. Civ. P. Code § 729.080.
21       On January 21, 2014, Valencia filed Supplemental Objections
22  (Doc. #15) to the Final Report.  He repeats the same objections,
23  and indicates that Co-Receivers have not responded to his
24  objections.  He offers a number of documents attached to the
25  objections (Doc. #15-2) supporting his objection to rents not
26  being calculated properly.  In addition, Valencia objects to the
27  lack of a detailed reporting regarding the amounts charged by Co-
28  Receivers and their attorneys in violation of California Rules of

Court Rule 3.1182.  He also objects to Co-Receivers asking for the Court to distribute the remaining funds without giving the proper procedure for doing so.

### 4. Co-Receivers' Response

Co-Receivers filed a Reply (Doc. #18) to Valencia's Supplemental Objections (Doc. #15).  In it, they first argue that the matter should be remanded back to the Shasta County Superior Court.  Similar to Redding Bank, they cite to Strain v. Superior Court of Los Angeles, 168 Cal. 216, 220 (1914).

Co-Receivers contend that Valencia's objections should be given no weight for a number of reasons.  First, Valencia did not raise any of these concerns or request a monthly report during the entire receivership, until the Final Report was filed.  Co-Receivers then argue Valencia's claims of accounting errors are without any support.

Co-Receivers argue that the economic realities of the time required some negotiation with "struggling tenants," leading to Co-Receivers accepting partial or late payments in order to keep the Property as fully occupied as possible.  Co-Receivers additionally contend that Valencia has failed to establish any basis for his claim to the receivership funds.

In response to the Court's minute order on January 29, 2014 (Doc. #19), Co-Receivers submitted a Reply (Doc. #20) to the responses and objections of the various parties (Doc. #8-10, 12, 15-17).  Co-Receivers emphasize that Valencia is only a secondary junior lienholder on the South Parcel and that his repeated complaints, discovery requests, and meritless motions during the pendency of the receivership were consistently denied by the

1   state court. Co-Receivers then repeat their earlier contentions.
2   Valencia responded (Doc. #24) to Co-Receivers' Reply (Doc.
3   #20). He indicates that Co-Receivers have failed to adequately
4   address his objections.

   C.   Opinion

   The Court does not find the parties' reliance on Strain to be well-founded in regards to the Court's jurisdiction over this matter. At the hearing on March 26, 2014, all parties present, excepting Valencia, agreed to accept the Court's exercise of jurisdiction over the matter. Accordingly, the Court makes the following findings based on the arguments of the parties in their papers and at the hearing held on March 26, 2014.

   1. Objections to Final Report

   The Court does not find any of the objections to the Final Report to be well-founded.

   The order appointing the Co-Receivers did not include any instruction for them to separately administer the North and South parcels. Therefore, SBA's objections regarding the commingling of funds are overruled.

   After review of the Final Account and Report and the additional briefing submitted by the parties, the Court finds Valencia's objections are without merit. The Court requested and received detailed records from counsel for the Co-Receivers laying out the basis for their legal fees and costs. After reviewing these records, the Court finds the attorneys' fees charged to the receivership to be appropriate. The remaining balance after payment of these expenses and costs is $77,128.61.
   //

     The Court accepts the Final Account and Report and orders the Co-Receivers to deposit the remaining funds and assets from the receivership with the Clerk's Office of the United States District Court for the Eastern District of California, Sacramento Division.  Upon deposit of those funds, the Co-Receivers are discharged from their duties.

          2. Remaining Funds

     Redding Bank, Valencia, and SBA all make claims to the remaining funds.  The Court finds SBA's arguments regarding Redding Bank's claims to the remaining funds to be persuasive.  Redding Bank could have taken the unpaid taxes into consideration when it calculated its full credit bid.  Redding Bank's interest in the Property was extinguished by that full credit bid.  As indicated at the March 26 hearing, the Court finds Redding Bank no longer has an interest in the remaining funds.

     However, SBA's demand for reimbursement from Redding bank is without merit.  The Court finds no legal authority or equitable basis for ordering such a remedy.  Accordingly, the request is denied.

     The Court similarly finds Valencia's reliance on Cal. Civ. P. Code § 729.080 to be misplaced.  The provision does not provide any guidance on how to disburse the remaining funds from the receivership as it provides for the real property itself to be freed from any liens on it.

     Based on the entire record before it, including the reasons stated in SBA's briefings (Doc. #8, 16, 33), the Court hereby orders the Clerk's Office to disburse the remaining funds to SBA as the sole junior lienholder on the North Parcel. All of theses

1  funds constitute income generated by and solely traceable to the
2  North Parcel.  Valencia has no right, title or interest in the
3  North Parcel; his lien attached only to the unprofitable South
4  Parcel.  Thus, Valencia is not entitled to any of the remaining
5  funds.

### III.  ORDER

7  For the reasons set forth above, the Final Report is
8  accepted; the Co-Receivers are discharged from their duties upon
9  deposit of the remaining funds; and the remaining funds are to be
10 disbursed by the Clerk's Office to SBA.
11 IT IS SO ORDERED.
12 Dated:  April 23, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE